UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Amanda Oswalt,

    Plaintiff,

vs

State Farm Mutual Automobile
Insurance Company,

    Defendant.

Case No: 11-12080
Honorable Victoria A. Roberts

_____/

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**I. INTRODUCTION**

Before the Court is Defendant State Farm Insurance Co.'s Renewed Motion for Summary Judgment. (Doc. # 14). This motion was previously stricken pending close of discovery and a settlement conference. *See* Doc. # 13.

The Court **DENIES** Defendant's motion; there are questions of fact for a jury to decide.

**II. BACKGROUND**

Plaintiff Oswalt worked for the Lucas County Board of Mental Retardation and Developmental Disabilities as a part-time bus driver since 2002. In this capacity, Plaintiff worked 26.25 hours per week at a rate of $18.22 per hour, resulting in pay of $478.28 per week. On May 20, 2009, Plaintiff responded to a job posting for a Shipping and Receiving Clerk, which offered 40 hours per week at $18.19 per hour, resulting in pay of $727.60. Although the rate was lower at the new position, Plaintiff would work more hours resulting in higher earnings. Additionally, after a 120-day probationary

1

period, Plaintiff would have received a raise to $19.14 per hour, plus any additional raises as agreed upon according to a collective bargaining agreement ("CBA"). Pursuant to this agreement, Plaintiff was offered the position as the most senior qualified person applying for the job.

The position had certain requirements: (1) a high school diploma or GED, (2) two years experience in shipping and receiving, (3) box truck training and certification, (4) forklift training and certification, (5) a computer skills test, and (6) National Association of Information Destruction (NAID) certification. The parties dispute whether Plaintiff completed the box truck requirements, the forklift requirements, and the NAID certification requirements.

On June 12, 2009 Plaintiff was injured in an accident, and suffers from, *inter alia*, chronic pain due to injuries to her pelvis, head, right hand, and knee. This accident precluded her from working and, allegedly, completing the requirements for the new position. Plaintiff had an insurance policy with Defendant, which began to pay work loss benefits to Plaintiff pursuant to Michigan's No-Fault Act (M.C.L. § 500.3107). It is unclear whether Defendant has paid all benefits due to-date; however, Plaintiff filed suit in Washtenaw Circuit Court, alleging that: (1) Defendant failed to pay benefits in breach of the insurance contract, and (2) that declaratory relief is needed to determine:

a) The applicability of the No-Fault Act to the claims of the Plaintiff;

b) The amount of wage loss benefits, replacement service expenses, medical expenses, no-fault interest, actual attorney fees and other benefits owed to the Plaintiff;

c) Whether, and in what amount, any reduction, set offs or reimbursements are entitled to be claimed by the Defendant;

      d) Such other determinations, orders and judgments as are necessary to fully adjudicate the rights of the parties.

The scope of this motion is not whether Plaintiff is entitled to wage benefits at all; both parties concede that this is a question of fact for a jury to decide.  Defendant seeks summary judgment concerning the rate of pay, if payments are due.  Defendant argues that this job offer was not firm, and there is no way of knowing, as a matter of law, whether Plaintiff would have met the qualifications; therefore, the rate of pay should be based on what Plaintiff earned at her previous job.  Plaintiff argues that she had a job offer, and, but for the accident, would have taken it, resulting in a higher rate of pay and more hours.  Plaintiff seeks to have the motion dismissed to allow the jury to hear evidence of the higher compensation.

### III.   ARGUMENTS

The parties agree that Michigan's No-Fault Act allows for recovery of work loss benefits for income "from work an injured person would have performed during the first 3 years after the date of the accident if he or she had not been injured . . . ." MCL § 500.3107(1)(b).  The parties also agree that this requirement allows Plaintiff to introduce evidence that she would have accepted another position, resulting in higher pay, but for the accident.  However, because Michigan's No-Fault Act does not allow for recovery of earning capacity, Plaintiff must introduce evidence that she would have attained this position, not that she merely could have.

Defendant says Plaintiff's job offer was contingent, and that there is no way of knowing if those contingencies, specifically the box truck and forklift training requirements, and the NAID certification, would be met.  Therefore, as a matter of law, Plaintiff is not entitled to compensation based on the higher paying job.  Plaintiff argues

the opposite – that she did complete the contingencies, and that the offer was firm. The only requirement left to complete was simple on-the-job training.

Both parties rely on the same case for support of their respective positions.

## ANALYSIS

### A. Standard of Review

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A fact is "material" and precludes a grant of summary judgment if "proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect application of appropriate principle[s] of law to the rights and obligations of the parties." *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984). Summary judgment is not appropriate if the evidence indicates that a reasonable trier of fact could rule in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

When ruling on a summary judgment motion, the court must view facts in the light most favorable to the non-moving party. *Id.* Additionally, the court must draw all reasonable inferences in the nonmoving party's favor. *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995).

The moving party bears the initial burden to show "the absence of a genuine issue of material fact as to at least one essential element of Plaintiff's claim." *Moses v. Providence Hosp. and Med. Ctrs., Inc.,* 561 F.3d 573, 578 (6th Cir. 2009). Once this burden is met, it shifts to the nonmoving party to establish the existence of a genuine

issue for trial. *Matsushita,* 475 U.S. at 585-87. The nonmoving party must establish more than some "metaphysical doubt" as to the material facts. *Id.* at 586. Plaintiff must establish a genuine issue with specific facts and affirmative evidence; it "may not rest upon mere allegations or denials of [its] pleading." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256-57 (1986). "The Court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion." *Golliday v. Chase Home Fin., LLC,* 761 F.Supp.2d 629, 634 (W.D. Mich. 2011) (citing *Matsushita*, 475 U.S. at 587 and *Smith v. Williams-Ash*, 520 F.3d 596, 599 (6th Cir. 2008)).

**B. Work loss provisions of Michigan's No-Fault Act**

It is well-settled Michigan law that a claimant under Michigan no-fault work loss provisions is entitled to actual lost wages and not earning capacity. *Marquis v. Hartford Accident & Indemnity,* 444 Mich. 638, 645 (1994); *Ouellette v. Kenealy*, 424 Mich. 83 (1985); *Gerardi v. Buckeye Union Insurance Co.,* 89 Mich.App. 90, 93-94 (1979). However, courts are not precluded from considering evidence that a claimant would have taken a higher paying position but for the accident. *See generally Gerardi,* 89 Mich.App. at 94-95. Therefore, while courts may consider this evidence, Plaintiff must prove "actual loss of income;" not some metaphysical possibility of accepting higher-paying employment. *Gerardi,* 89 Mich.App. at 94-95.

Michigan courts have addressed this issue in a few published cases, and numerous unpublished opinions. Both parties cite *Swartout v. State Farm Mutual Automobile Ins. Co.,* 156 Mich.App. 350 (1987), where the court addressed this very issue. The court held that a plaintiff is not precluded from offering evidence that, but for

5

the accident, she would have accepted a higher paying position. *Id.* at 353. In *Swartout*, a nursing student was injured in an automobile accident; she completed her nursing education one year later than expected. *Id.* at 352. The Plaintiff provided affidavits from the school and her employer, establishing that she would have been employed, but for the accident, one year earlier in the same position and at an identified rate of pay. *Id.* at 352.

The court held that this evidence was sufficient, and "the question of whether plaintiff [sic] would have received income but for her injuries should be left to the trier of fact." *Id.* at 355.

> [The plaintiff] has alleged facts which, if believed, would establish the source of her employment, the exact date of her employment and the exact wages that would have been received. . . [i]n other words, plaintiff [sic] has stated a claim for wages that would, rather than could, have been earned but for her injuries. We therefore conclude that plaintiff's [sic] claim should have survived defendant's motion for summary disposition."

*Id.* at 354.

Per *Swartout*, a plaintiff should establish three things: the source of employment, the dates of employment, and the exact wages she would have earned. However, courts have not held that proof of these elements is absolutely required to recover for wage loss. In *Sullivan v. North River Ins. Co.*, 283 Mich.App. 433 (1999), the Michigan Court of Appeals reversed summary disposition granted to the defendant, holding that there was a question of fact as to whether Sullivan would have returned to work but for her injuries. Sullivan quit her long-time job as a bookkeeper for approximately three years in order to care for her terminally ill son. *Id.* at 434. Shortly before her son's death, Sullivan was injured in a car accident, which precluded her from returning to work. *Id.* at 434-35. At the time of the accident, Sullivan was still unemployed;

although, when she quit her job, she planned to seek employment after her son's death. *Id.* However, due to her accident, she did not take any steps, other than helping her son-in-law with minor office work, to seek employment subsequent to the accident and her son's death. *Id.* at 438.

The court in *Sullivan* held that the extensive work history of various bookkeeping and comptroller positions was sufficient to raise a question of fact as to what her wages would have been but for the accident. *Id.*

Since *Sullivan* addressed whether an unemployed person may offer evidence of wage loss benefits, it is on point; it demonstrates the evidentiary threshold for alleging work loss wages is not necessarily the *Swartout* factors. *Id., see generally Sparks v. Citizens Insurance Company of America*, 2010 WL 2076947. Sullivan did not put forth evidence that she would have been able to find a specific job, affidavits of potential employers, or that she was still qualified to work in the same field after three years off the job. *Sullivan,* 238 Mich.App. at 437-38. Yet, the court held there was a question of fact created in part by Sullivan's extensive work history. The court held it was for the jury to decide whether she would have received those wages. *Id.*

Michigan courts uphold this reasoning in numerous unpublished opinions. While not binding, several of them are instructive and show how courts have applied these rules to varying factual scenarios. In *Sparks v. Citizens Insurance Company of America*, No. 289395, 2010 WL 2076947, the court held, *inter alia*, that *Swartout* was not meant to be a threshold level of evidence to show work loss benefits, and that an affidavit of an employer that plaintiff was more than qualified, and that they "hoped" to

7

get her back on the schedule, was sufficient to preclude summary judgment. *Id.* at *3. In *Williams v. Farm Bureau Insurance Company*, No. 221119, 2001 WL 985821, the court held that evidence that plaintiff purchased equipment to become self employed, and an accountant's projections of the income that he would have earned from this employment, was sufficient evidence to preclude summary judgment. *Id.at *3-4.* Conversely, in *Tran v Ankney and Krl, d/b/a/ Midas Muffler Shop*, No. 195378, 1998 WL 1990340, the court held that that evidence of a child's ability and intent to attend college, with no further evidence that they would have actually worked a specific job or for specific compensation, was insufficient evidence to preclude summary disposition. *Id.* at *2.

The common theme in these cases is that evidence of specific employment, not merely conjectural employment, is sufficient to preclude summary judgment; courts hold that it is for a jury to decide work loss benefits based on potential employment.

Plaintiff alleges she was offered a higher-paying position, and, but for her accident, she either has, or would have, completed the contingencies and accepted the position. According to the deposition of Diane Vetter, Human Resources Representative for Plaintiff's former employer, these contingencies were: (1) a high school diploma or GED, (2) two years experience in shipping and receiving, (3) box truck training and certification, (4) forklift training and certification, (5) a computer skills test, and (6) NAID certification. Per a collective bargaining agreement, the position would be awarded to Plaintiff upon completion of the above contingencies, since she had the highest seniority among the qualified applicants.

The parties do not dispute that Plaintiff had the education, experience, or computer skills required for the position.  However, there are varying arguments as to whether Plaintiff met the other requirements.  If Plaintiff can present evidence as to her completion of these contingencies, summary judgment is not appropriate.  Plaintiff testified in her deposition that she met all these requirements for training, except for a drive in the box truck.

*Box Truck Training*

According to Ms. Vetter, the box truck training requirement consists of licensing and a few hours of hands-on training involving a drive in a box truck.  Since Plaintiff held a commercial drivers license with a school bus passenger endorsement, she met the licensing requirements for a box truck.  The only remaining requirements consisted of a few hours of hands-on training in the box truck.

*Forklift Training*

Plaintiff's position was contingent on successfully passing the forklift training requirements.  This consisted of four hours of classroom instruction, and then a hands-on observation on the forklift.  This instruction and certification is conducted by Northwest Ohio Safety Counsel.  The training has a 90%-95% passing rate.

According to Plaintiff's deposition testimony, she successfully attended the forklift exam, thereby completing this requirement.  Additionally, Dianne Vetter testified that it would be "reasonable" to pass the classroom instruction, testing, and hands-on training requirements for the forklift training.

9

*NAID Certification*

Plaintiff introduced evidence that she passed the National Association for Information Destruction (NAID) certification, as well as a background and drug test. There is conflicting testimony by Ms. Vetter regarding whether Plaintiff met this requirement. At first, Ms. Vetter stated that Plaintiff needed to complete NAID certification. However, she later indicated that Plaintiff did complete the NAID certification, as well as the drug and background check. This conflicting testimony, coupled with Plaintiff's testimony that she did complete all the requirements except for the drive in the box truck, raises an issue of fact for the jury to decide.

*Summary*

Plaintiff presented sufficient evidence that the position she was offered was more than a purely metaphysical hope of employment. There is evidence that Plaintiff completed most, if not all, of the testing and licensing requirements, and that the position was contingent on minor hands-on training. While Defendant argues that, as a matter of law, this evidence is insufficient to prove that Plaintiff would have received this employment, per *Swartout,* this determination is a question of fact for the jury to decide. Plaintiff presented evidence which, if believed by the jury, would show that she would have had the higher-paying position with her employer but for the accident.

### IV.    Conclusion

Plaintiff created a material question of fact concerning work loss benefits. This is not a case of unsupported speculation about future wages – Plaintiff can point to specific employment and compensation as required in *Swartout* and its progeny. While

her offer of employment may have been conditional, Plaintiff presented evidence that she met the requirements for the job, which is more evidence than presented in *Sullivan*. Furthermore, there is evidence that, due to her seniority and a CBA, Plaintiff would have received this position upon completing the requirements.

There are questions of fact; the motion is **DENIED.**

**IT IS ORDERED.**

                                                /s/ Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: 2/22/12

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 22, 2012 February 22, 2012.
>
> S/Linda Vertriest
> Deputy Clerk